## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAMELA NULL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-297-F |
| | ) | |
| COMMUNITY HOSPITAL | ) | |
| ASSOCIATION, and LIFE INSURANCE | ) | |
| COMPANY OF NORTH AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In this case brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, specifically under 29 U.S.C. § 1132(a)(1)(b), plaintiff Pamela Null seeks review and reversal of defendants' decision to terminate her long term disability ("LTD") benefits effective August 17, 2006 and to terminate the Waiver of Premiums ("WOP") on Group Life Insurance. The defendants are (i) Community Hospital Association d/b/a Boulder Community Hospital, plaintiff's former employer, which is the Plan Administrator of an "employee welfare benefits plan (Plan)" as defined by ERISA which provides life insurance benefits and long-term disability benefits to eligible employees of Boulder Community Hospital, and (ii) Life Insurance Company of North America ("LINA"), which issued life insurance and long-term disability policies to defendant Community Hospital Association to provide the life insurance benefits and long-term disability benefits to Boulder Community Hospital's eligible employees under its Plan. The parties have jointly filed the administrative record ("AR") in this case and have fully briefed the merits.

Factual Background

Plaintiff was employed as a nurse by Community Hospital Association at the Boulder Community Hospital from October 15, 1980 until May 4, 2000, when she became disabled.  She applied for long-term disability benefits on July 20, 2000, claiming severe, diffuse pain in both legs, buttocks and both arms and fleeting pains in her wrists, feet, hands and neck.  AR 1392-1402.  By letter dated September 25, 2000, defendant LINA approved plaintiff's application for LTD benefits effective August 1, 2000.  AR 1308.  By letter dated May 4, 2001, plaintiff's claim for a waiver of premiums on her Group Life Insurance during her disability was approved by defendant LINA, effective February 4, 2001.

By letter dated August 23, 2006, defendant LINA[1] terminated plaintiff's LTD benefits effective August 18, 2006, AR 523, stating that "[w]e have been notified by your treating physician, Dr. Robert Hynd that you were released to return to work as of August 18, 2006."  *Id.*  Plaintiff's waiver of premiums for her group life insurance was apparently terminated at the same time or shortly thereafter.

By letter dated February 8, 2007, plaintiff appealed the termination of her LTD benefits and WOP.  AR 516-18.  The grounds for plaintiff's appeal were set forth in letters from plaintiff's attorney to defendant LINA dated February 20, 2007 and March 6, 2007.  AR 461-67 & 450-53.  In particular, through her attorney, plaintiff pointed out that defendant's decision was made without any written opinion or documentation from Dr. Hynd to support his verbal opinion (or even an opinion as to whether plaintiff could work full-time or part-time), as well as the absence of any evidence that plaintiff was capable of working at an occupation that would have

---

[1]     This and subsequent letters rejecting plaintiff's appeals came from CIGNA.  According to CIGNA's correspondence, CIGNA is a registered service mark for various operating subsidiaries, including Life Insurance Company of North America (LINA).  Hence, the court will refer to letters to and from CIGNA as letters to and from defendant LINA.

2

enabled her to earn more than 80% of her Indexed Covered Earnings.  AR at 450-53.
Plaintiff's counsel pointed out that defendant LINA's own Vocational Rehab
Counselor had "declared that there are no occupations in the Oklahoma City labor
market which Ms. Null could perform." *Id.* at 453.  Plaintiff and her counsel provided
additional documents to defendant LINA in conjunction with the appeal. *See* AR 467-
69.  By letter dated April 17, 2007, defendant rejected plaintiff's appeal, advising that
plaintiff's entire file had been reviewed by defendant's "on staff Medical Director,"
that Dr. Hynd had acknowledged that plaintiff was physically able to return to work
and that "[t]here is no documentation of significant measured physical limitations to
medically support extension of Long Term Disability and Waiver of Premium Claim."
AR 426.  The letter advised plaintiff that she could request a review of the decision
provided the request for review included new documentation plaintiff wished LINA
to consider.  *Id.* at 427.

Plaintiff, through her counsel, filed a second request for review by letter dated
November 16, 2007, enclosing additional records, from August 17, 2006 forward, of
Robert Hynd, M.D., Oklahoma Pain Care and Tanna Shaw, M.D.  AR 327-31.  In this
letter, plaintiff asserted that the decision to terminate plaintiff's LTD benefits and
WOP claim was arbitrary and capricious and that the record lacks substantial evidence
to support the decision.  *Id.* at 328-29.  Plaintiff also asserted that no vocational
evaluation had been obtained to determine whether plaintiff was able to perform any
other occupation for which she was qualified, *id.* at 329, and submitted a report of a
rehabilitation consultant.  *Id.* at 330.  By letter dated January 24, 2008, defendant
LINA, through CIGNA, notified plaintiff that it upheld its prior decision to deny
plaintiff's claims in the second, "voluntary appeal," after having had one of its "on
staff Medical Directors" review plaintiff's entire file and the additional medical
information submitted by plaintiff, without deference to prior reviews.  *Id.* at 261.

Defendant advised that "[t]he medical review has concluded that the restrictions and limitations are not supported and do not preclude your client from working from August 17, 2006 and beyond."  AR 262.  The letter further explained as follows:

> According to the information in her file, the musculoskeletal exam is unremarkable.  Dr. Romea is unable to identify physical manifestations of active Rheumatoid Arthritis and questions the diagnosis.  The information from Dr. Schwartz reports that your client does volunteer work for a few days per week.  Her physical exam describes no physical limitations.  Dr. Shaw indicates that Ms. Null has normal gait and station, and strength and tone are normal.  The Venous Doppler notes right Baker's Cyst, but this would not preclude work and is amenable to simple treatments.  In light of this fact, we must reaffirm our prior decision and no further benefits are payable.

*Id.*

Plaintiff filed this action on March 24, 2008, asserting that defendant's refusal to pay LTD benefits and waive the premium under the group life insurance policy was arbitrary and capricious and "violated the prudent man standards set forth in Title 20 U.S.C. §§ 1104 and 1105."  Complaint, at p. 7.

<u>Summary of the Parties' Arguments</u>

Plaintiff asserts that she finds no language in the plan giving the Plan Administrator any discretionary authority and therefore, review herein must be *de novo*.  Defendants assert that the Life Insurance Policy confers discretionary authority on LINA to interpret the terms of the Plan, citing AR 210, and thus the arbitrary and capricious standard applies to plaintiff's WOP claim.  They also assert that the LTD benefits policy provides that the plaintiff must provide "satisfactory proof" of her disability to defendant LINA before benefits will be paid, citing AR 501.  Such language, defendants assert, grants discretion to determine eligibility for benefits, citing <u>Nance v. Sun Life Assurance Co. of Canada</u>, 294 F.3d 1263, 1267 (10th Cir. 2002) and <u>Caldwell v. Life Insurance Co. of North America</u>, 959 F.Supp. 1361, 1365

(D. Kan. 1997).  Accordingly, defendants maintain that the arbitrary and capricious standard applies to plaintiff's claim for LTD benefits.

Plaintiff also asserts that defendant LINA's termination of plaintiff's LTD and WOP benefits was arbitrary, capricious and unreasonable and that the court should decrease the deference given to the decision because the Plan providing the LTD and WOP benefits has been solely administered by defendant LINA, the underwriter and issuer of the insurance policies providing for such benefits, for which reason defendant LINA has a conflict of interest.  Plaintiff also asserts that under the LTD benefits policy terms, defendant had to prove not only that plaintiff could perform in other occupations but that plaintiff could earn at least $3,620.61 in one or more of those occupations, of which there was absolutely no proof.  Additionally, plaintiff asserts that defendant offered no medical evidence that even tended to show that plaintiff was no longer disabled.  Defendant LINA's reliance on hearsay upon hearsay, *i.e.* what Dr. Manolakas said Dr. Hynd allegedly told him, renders defendant's decision arbitrary and capricious citing Govindarajan v. FMC Corp., 932 F.2d 634, 637 (7th Cir. 1991).  Plaintiff points out that the vocational evidence in the administrative record shows that plaintiff is disabled and that even if defendant had medical evidence tending to support its determination, that would not be sufficient because in order to terminate benefits, it would have to have a vocational expert's report showing the availability of jobs plaintiff is capable of performing.

Defendants, on the other hand, argue that the objective medical evidence together with "Dr. Hynd's release" constitutes substantial evidence that plaintiff was no longer disabled on August 18, 2006, concluding that there was no abuse of discretion in terminating plaintiff's benefits, citing Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 323-24 (4th Cir. 2008); Meraou v. Williams Co. Long Term Disability Plan, 221 Fed. Appx. 696 (10th Cir. Feb. 9, 2007); Balmert v.

<u>Reliance Standard Life Insurance Co.</u>, 2008 WL 4404299 (S.D. Ohio Sept. 23, 2008); and <u>Sullivan v. Limited Brands, Inc. Long-Term Disability Program</u>, 2008 WL 659641 (D. Co. Mar. 5, 2008).  Defendants also assert that plaintiff has misinterpreted the disability policy provisions.  Defendants state that the provision stating that a person is disabled if he or she cannot earn at least 80% of his or her Indexed Covered Earnings ("ICE"), is relevant only if such inability is "solely due to Injury or Sickness," which they contend the record shows was not the case for plaintiff. Moreover, defendants assert that they had no burden of showing that Ms. Null was able to earn at least 80% of her ICE; rather, they maintain it was Ms. Null's burden to provide defendants with proof of a disability precluding her from working in any occupation.

Finally, plaintiff argues that defendant LINA did not provide her with a full, fair and adequate review as required by ERISA.  She argues that "Defendants failed totally to even consider Plaintiff's additional evidence or give a good reason for disregarding the vocational evidence that defendant itself developed."  Defendants in response assert that the medical professional's file reviews within the administrative record and defendant LINA's letters explaining the denial of plaintiff's appeals reveal that there is no question but that defendant LINA considered all of the additional evidence submitted by plaintiff.  Defendants conclude that in light of evidence that plaintiff's rheumatoid arthritis was in remission, her doctor's evaluations of her restrictions and limitations, the FCE indicating that Ms. Null could perform a medium-level occupation[2] and the opinions of defendant's medical directors that she was capable of working, defendant LINA's decision to discontinue benefits and to terminate her

---

[2]     In May of 2005, a Functional Capacity Evaluation of Ms. Null was performed by a physical therapist, Brad Finley.  AR 641-670.  He concluded that Ms. Null was physically capable of performing work at a medium physical demand for 8 hours per day with a 20-pound lifting restriction.  AR 641.

WOP cannot be said to be wrong and certainly not arbitrary and capricious.  In the event, however, that the court finds that defendant LINA's decision was incorrect or arbitrary and capricious, defendants assert that the proper remedy is to remand the case to the Plan Administrator to collect additional information, citing a host of cases.

Standard Of Review

Plaintiff is a Plan participant in the insurance plan administered by defendant Community Hospital Association d/b/a Boulder Community Hospital.  *See* "Supplemental Information for Community Hospital Association Term Life and LTD Plan" attached to Group Long Term Disability Insurance Plan (referred to by defendants as "Group Insurance Certificate"), AR at 1424-1430.  The Supplemental Information, which is part of the "Summary Plan Description" required by ERISA, provides that the Plan Administrator is Community Hospital Association d/b/a Boulder Community Hospital and that the "Plan Administrator has authority to control and manage the operation and administration of the Plan," of which it is also the Plan Sponsor.  AR at 1424.  It also states that the "Plan of benefits is financed by the Employer."  *Id.*  However, the "Summary Plan Description" makes it clear that the underwriter and issuer of a group long-term disability insurance policy issued to Community Hospital Association d/b/a Boulder Community Hospital is Life Insurance Company of North America, a CIGNA Company.

"A denial of benefits challenged under § 1132(a)(1)(B)," as in this case, "is to be reviewed under a *de novo* standard unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

The "Summary Plan Description" grants no discretion to the plan administrator, Community Hospital Association d/b/a Boulder Community Hospital, to determine eligibility for LTD benefits or the waiver of premiums for life insurance, nor does it

7

give the plan administrator discretionary authority to construe plan or policy provisions. Accordingly, the *de novo* standard of review applies.

It is clear from the administrative record, however, that defendant Life Insurance Company of America made the decisions to pay plaintiff LTD benefits and to terminate those benefits as well as to grant plaintiff a waiver of life insurance premiums and to terminate that waiver. While a plan administrator may delegate some of his authority to another fiduciary or even non-fiduciary third parties, at least when such delegation is expressly authorized in the plan, and perhaps even when it is not so authorized, *see* <u>Geddes v. United Staffing Alliance Employee Medical Plan</u>, 469 F.3d 919, 925-26 (10th Cir. 2006), in this case the plan administrator was not granted any authority in the plan to delegate to LINA. Moreover, the Tenth Circuit has to date refused to recognize the concept of a *de facto* plan administrator. *See* <u>McKinsey v. Sentry Insurance</u>, 986 F.2d 401, 404 (10th Cir. 1993). Defendant LINA does not fall within the definition of a "fiduciary" under ERISA unless it exercises discretionary authority or control concerning the management of the plan or the disposition of its assets or it has discretionary authority or responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A)(i) & (iii). Assuming, without deciding, that defendant LINA is a "fiduciary" with respect to the Community Health Association Term Life and LTD Plan, the court looks to the plan to determine whether discretion is conferred on defendant LINA to make decisions as to eligibility for benefits or to construe the terms of the plan.

Defendants argue that language in the life insurance policy issued by LINA to Community Hospital Association stating that "[i]n order to qualify for Waiver of Premiums an Employee must submit due proof that he or she has been disabled. . .," AR 210, gives defendant LINA discretion to determine whether the employee has established that he or she is disabled. They argue that language in the long-term

disability insurance policy stating that "[s]atisfactory proof of Disability must be provided to the Insurance Company, at Employee's expense, before benefits will be paid," AR at 501; *see* AR 1413 ("Also, we ask you to provide us with satisfactory proof of your Disability, at your expense, before benefits will be paid."), vests discretion in defendant LINA to determine whether a plan participant is disabled and eligible for long-term disability benefits.   The matter is not quite that simple. Although the Tenth Circuit has made it clear that plan language requiring "proof satisfactory to [a] plan administrator" suffices to convey discretion to the plan administrator, language requiring satisfactory proof without specifying who must be satisfied, *e.g.*, "satisfactory proof must be submitted to us," *does not* confer discretion. Ray v. Unum Life Insurance Company of America, 314 F.3d 482, 485-86 (10th Cir. 2002); Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1263, 1267-68 (10th Cir. 2002).   Language requiring only that satisfactory proof of disability be submitted to someone merely indicates that the proof must satisfy some objective or reasonable person standard.   Ray, 314 F.3d at 486; Nance, 294 F.3d at 1267.   Applying the principles set forth in Ray and Nance, the language on which defendants rely does not confer any discretionary authority on defendant LINA.   Accordingly, the court applies the *de novo* standard of review to defendant LINA's termination of plaintiff's LTD benefits.   "In conducting a *de novo* review, the district court's 'role is to determine whether the ERISA plan administrator made a correct decision based on the record before it at the time the decision was made.'"   Gilbertson v. AlliedSignal, Inc., 172 Fed. Appx. 857, 860 (10th Cir. March 28, 2006) (No. 05-2248), *quoting* Hammers v. Aetna Life Insurance Co., 962 F.Supp. 1402, 1406 (D. Kan. 1997).   *See* Sperandeo v. Lorillard Tobacco Co.,460 F.3d 866, 872 (7th Cir. 2006).   In making that determination, no deference or presumption of correctness is accorded the decision of the plan administrator or fiduciary.   *See* Gilbertson, 172 Fed. Appx. at 860, *citing*

Hammers, 962 F.Supp. at 1406.  Under the *de novo* standard of review, where there is a dispute over the meaning of plan language, the court applies normal rules for contract interpretation and accords no deference to a plan administrator's or fiduciary's interpretation.  Orndorf v. Paul Revere Life Insurance Co., 404 F.3d 510, 517 (1st Cir. 2005), *citing* Hughes v. Boston Mutual Life Insurance Co., 26 F.3d 264, 267-68 (1st Cir. 1994).

Defendants also assert that defendant LINA has discretionary authority to determine whether an individual is eligible for a waiver of life insurance premiums under the Life Policy, citing AR 210.  *See* defendants' brief at p. 8 & n. 1.  That page of the policy, captioned "Continuation of Insurance," provides that an employee who is no longer in "Active Service" may be eligible to continue insurance.  AR 210.  In relevant part, it states as follows:

> If an Employee is under age 60 and his or her Active Service ends due to Disability, Life Insurance Benefits . . . will continue until the end of the earliest of the following dates:
>
> 1.      The date the Employee is no longer disabled.
>
> 2.      The date he or she no longer qualifies for Waiver of Premium.
>
> . . . .
> . . . .
>
> In order to qualify for Waiver of Premium an employee must submit due proof that he or she has been Disabled for the Benefit Waiting Period. . . .  Such proof must be submitted to the Insurance Company no later than 3 months after the Employee satisfies the Benefit Waiting Period. . . . .  After premiums have been waived for 12 months, they will be waived for future periods of 12 months, if the Employee remains Disabled and submits satisfactory proof that Disability continues. Satisfactory proof must be submitted to the Insurance Company 3 months before the end of the 12 month period.

. . . .

. . . .

Insurance will end for any Employee whose premiums are waived on the earliest of the following dates:

1.    The date he or she is no longer Disabled.

AR 210.  Nowhere in the foregoing language is discretionary authority conferred on the "Insurance Company," *i.e.*, defendant LINA, to determine whether or when an employee is disabled or whether or when an employee is no longer disabled.  Nor is any discretion conferred on defendant LINA to determine generally whether an employee is eligible for a waiver of life insurance premiums (WOP).  Language requiring that the employee submit "due proof" or "satisfactory proof" that the employee is disabled or that the disability continues does not, under extant Tenth Circuit authority, confer discretionary authority upon defendant LINA to determine whether an employee is disabled or whether the employee's disability continues.  *See* Ray v. Unum Life Insurance Company of America, Inc., 314 F.3d at 485-86; Nance v. Sun Life Assurance Co. of Canada, 294 F.3d 1267-68.  "Satisfactory proof" and, by analogy, "due proof" to be submitted to the insurance company (as opposed to proof satisfactory to the insurance company) merely means that the proof must meet an objective standard or a reasonable person standard.  *Id.*

However, defendants have quoted in their brief another provision of the life insurance policy, *see* AR at 197-226, which does give defendant LINA discretionary authority to interpret the terms of the Plan documents, as they pertain to the life insurance component of the plan, and to decide questions of eligibility for coverage or benefits under the Plan, that is, the life insurance component of the Plan:

For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has appointed the Insurance Company as the Plan

11

fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims.  In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.  All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.  The Insurance Company has no fiduciary responsibility with respect to the administration of The Plan except as described above.  It is understood that the Insurance Company's sole liability to the Plan and to Participants and Beneficiaries under The Plan shall be for the payment of benefits provided under this Policy.

AR 217-18.  Because defendant LINA is designated a plan fiduciary by the plan administrator for purposes of the life insurance component of its plan and is granted discretionary authority to interpret the terms of plan documents pertaining to life insurance and in deciding questions of eligibility for coverage or benefits under the life insurance policy, pursuant to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 the court applies the arbitrary and capricious standard of review to defendant LINA's decision that plaintiff was no longer eligible for WOP for life insurance because she was no longer disabled.   Under that standard, review of a plan interpretation or benefits decision is limited to determining whether it was reasonable and made in good faith.  Fought v. Unum Life Insurance Co. of America, 379 F.3d 997, 1003 (10th Cir. 2004).  See Kellogg v. Metropolitan Life Insurance Co., 549 F.3d 818, 826 (10th Cir. 2008); Finders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189 (10th Cir. 2007).  The court will not substitute its judgment for that of the plan administrator or fiduciary unless the administrator's or fiduciary's actions are without a reasonable basis.  Geddes v. United Staffing Alliance Employee Medical Plan, 469 F.3d 919, 928 (10th Cir. 2006).  But where a plan administrator or fiduciary is an insurance company which both has discretionary authority to evaluate claims for benefits and pays benefits, it has a conflict of interest.

Metropolitan Life Insurance Co. v. Glenn, ___ U.S. ___, 171 L.Ed.2d 299, 307-09 (2008); Fought v. Unum Life Insurance Company of America, 379 F.3d at 1003 (citing Pitman v. Blue Cross & Blue Shield of Oklahoma, 217 F.3d 1291, 1296 (10th Cir. 2000)). Defendant LINA's conflict of interest in determining whether plaintiff was eligible for a WOP with respect to life insurance is a factor to be considered in determining whether defendant LINA abused its discretion in determining that plaintiff was no longer disabled and in terminating her WOP benefits. Metropolitan Life Insurance Co. v. Glenn, *supra*, 171 L.Ed.2d at 309-12.

Was Defendant LINA's Decision To<br>Terminate Plaintiff's LTD Benefits Correct?

By letter dated September 25, 2000, defendant LINA approved plaintiff's receipt of long-term disability (LTD) benefits retroactively effective August 1, 2000. AR 1308. The medical records available at the time defendant LINA approved plaintiff's claim for LTD benefits indicated that plaintiff had arthritis and/or severe myalgia, an abnormal EMG and lumbar disc disease. By letter dated August 23, 2006, defendant LINA notified plaintiff that no additional LTD benefits would be paid after August 17, 2006, *i.e.*, that it was terminating plaintiff's LTD benefits effective that date. AR 523. Defendant LINA advised plaintiff of its reason for terminating her LTD benefits: "We have been notified by your treating physician, Dr. Robert Hynd that you were released to return to work as of August 18, 2006. . . . ." *Id.*

By letter dated February 8, 2007 plaintiff appealed defendant LINA's decision to terminate her LTD benefits, stating that she would provide as soon as possible supporting medical documentation which would support her claim that she had been unable to work since August 18, 2006. AR 516. Plaintiff's attorney followed up with two letters setting forth the basis of plaintiff's appeal. AR 461-68. The first letter from plaintiff's attorney enclosed a letter dated February 12, 2007, from Raul Romea,

M.D., one of plaintiff's physicians, stating that "Pam Null has rheumatoid arthritis that is in active stage" and that he recommended that Ms. Null "work part time sedentary for 4-6 hours a day."  AR 468.  The second letter from plaintiff's attorney, dated March 6, 2007, was sent after the attorney had received from "CIGNA" what was alleged to be its complete file on Ms. Null.  AR 450-53.  Plaintiff's attorney noted that defendant LINA had never received any written documentation from Dr. Hynd concerning whether plaintiff could return to work.  AR 450.  He noted that the company file contained a letter dated August 17, 2006 from Dr. Robert Manolakos, medical director for defendant, addressed to Dr. Hynd, acknowledging that Dr. Hynd's purported opinion that Ms. Null was "physically able to return to work at this time" was verbal, and requesting written verification or confirmation that the August 17, 2006 letter contents were an accurate description of Dr. Hynd's telephone conversation.  *Id.*  Plaintiff's attorney pointed out that defendant had never received written confirmation of the alleged verbal opinion from Dr. Hynd.  AR 451. Defendant's file also revealed, according to plaintiff's counsel, that defendant LINA had faxed an Attending Physician Statement and Physical Ability Assessment to Dr. Hynd's office on August 14, 2006 for Dr. Hynd to complete but that there were no such completed forms.  AR 451.  Additionally, plaintiff's counsel pointed out that defendant's own vocational rehab counselor had concluded that "there are no occupations that the claimant could reasonably be expected to perform in the Oklahoma City labor market."  AR 452.  Finally, he again (*see* February 20, 2007 letter, AR 461-68) referred to the definitions of "disabled" in the policy (applicable after disability benefits had been payable for 24 months) and pointed out that the decision to terminate plaintiff's LTD benefits had been made without any evidence to support the conclusion that Ms. Null was capable of working at an occupation which would have enabled her to earn more than 80% of her Indexed Covered

Earnings, AR at 453, which plaintiff's attorney had indicated in his letter of February 20, 2007, would be approximately $33,290 annually.  AR 465.

By letter dated April 17, 2007, defendant LINA affirmed its decision to terminate plaintiff's LTD benefits, stating that the information on file did not establish that plaintiff met the definition of disability and that continued LTD benefits were payable to her.  AR 426.  The letter further stated as follows:

> Ms. Null's complete file was reviewed by on staff Medical Director and was noted that Ms. Null claims that she remains unable to work because of myalgias and arthralgias.  It is noted that she has low back problems and states she can not stand for long periods at a time.  On August 17, 2006 a peer call was placed to Dr. Hynd and was acknowledged that Ms. Null is physically able to return to work.  Provided additional records with appeal encompass the period of time for which benefits have already been paid.  There is no documentation of significant measured physical limitations to medically support extension of Long Term Disability and Waiver Of Premium claim.  Examples of this could include measured range of motion limitations by goniometry or inclinometry and/or significant muscle strength deficits by manual muscle testing.  Absent such documentation, no continued work restrictions are medically supported.

AR 426-27.

Plaintiff made a second request for review by letter from her attorney dated November 16, 2007, submitting a report of an October 3, 2007 vocational evaluation and assessment of plaintiff by Jeffrey L. Owen, M.S., C.R.C., rehabilitation consultant of Owen Rehabilitation Consultant Service, Inc., additional records from August 17, 2006 forward from Robert Hynd, M.D., of McBride Clinic Orthopedics & Arthritis, Oklahoma Pain Care and Tanna Shaw, M.D.  AR 327-331 (letter appeal) & 332-414 (records submitted).

Plaintiff's attorney again pointed to the absence of written evidence that Dr. Hynd made the statement attributed to him that plaintiff could return to work, AR 328,

and also pointed out that Dr. Hynd's written notes of August 17, 2006 make no mention of Ms. Null's ability or non-ability to return to work.  AR 329.  Plaintiff's attorney further asserted that defendant had no medical evidence from any source indicating that Ms. Null was not disabled and did not obtain its own vocational evaluation to determine whether Ms. Null was able to perform any occupation for which she was qualified.   He pointed out that Jeffrey Owen, a rehabilitation consultant, found after reviewing defendants' record on Ms. Null and interviewing her on October 7, 2007, that Ms. Null would be unable to return to her former work with Boulder Community Hospital, was unable to maintain a 40-hour work week, was permanently and totally disabled and was unable to return to the workforce on any kind of sustained basis.  AR 330.  By letters dated December 7, 2007 (AR 290), December 19, 2007 (AR 285), December 21, 2007 (AR 280), and December 27, 2007 (AR 273), plaintiff's attorney submitted additional medical records to defendant LINA, specifically records from Raul Romea, M.D., of the Orthopedic Institutes (AR 291-325), Joseph Grillo, M.D., of the Orthopedic Institute (AR 286-288 & 281-283) and a December 6, 2007 x-ray report from the Orthopedic Institute (AR 274-278).

By letter dated January 24, 2008, defendant LINA notified plaintiff's attorney that it upheld its prior decision to deny plaintiff's claims for LTD benefits and a WOP.  AR 261-62.  The letter advised that all of the additional medical evidence submitted by plaintiff's attorney, as well as the complete claim file, had been reviewed by one of defendant's "on staff Medical Directors" and that the "medical review has concluded that the restrictions and limitations are not supported and do not preclude your client from working from August 17, 2006 and beyond," AR at 261-62.  The medical review findings are quoted above at p. 4.

Plaintiff had received disability benefits under the policy from August 1, 2000 to August 18, 2006.  Therefore, the applicable definition of disability under the LTD policy is as follows:

> After Disability Benefits have been payable for 24 months, you are Disabled if your Injury or Sickness makes you unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Covered Indexed Earnings.

AR 1422.  Plaintiff's Indexed Covered Earning as of June 9, 2005, were $4,525.76, 80% of which was $3,620.61.

Plaintiff asserts that defendant LINA's reliance on its Medical Director's report of what Dr. Hynd purportedly said in a telephone conversation, on August 17, 2008 (that is, that there was no medical reason why plaintiff could not return to work, *see* AR 550) is "hearsay upon hearsay" upon which defendant LINA could not rely because it is not admissible in evidence.  Indeed, plaintiff asserts that reliance on such hearsay itself renders defendant LINA's decision arbitrary and capricious.  Moreover, plaintiff asserts that even if Dr. Hynd made the statement attributed to him by Dr. Manolakas, it is contradicted by Dr. Hynd's earlier written Medical Disability Report dated March 8, 2006.  However, defendant LINA as a presumed fiduciary of the plan, is not bound by the rules of evidence and may rely upon hearsay.  *See* Speciale v. Blue Cross and Blue Shield Association, 538 F.3d 615, 622 n. 4 (7th Cir. 2008); Karr v. National Asbestos Workers Pension Fund, 150 F.3d 812, 814 (7th Cir. 1998); Johnson v. Bellsouth Long Term Disability Plan for Non-Salaried Employees, 2006 WL 2092273 at *14 (M.D. Fla. July 26, 2006) (No. 3:15-CV-858-J-32TEM) ("Any suggestion that the administrator acted arbitrarily and capriciously by relying on these conversations because they are hearsay is without merit.").  *Cf.* Pierre v. Connecticutt General Life Insurance Co., 932 F.2d 1552, 1562-63 (5th Cir. 1991) (administrator can

rely on hearsay but court, on review, can require that the hearsay meet certain indicia of reliability and may determine that denial of benefits based solely on uncorroborated hearsay is an abuse of discretion).  Furthermore, because plaintiff twice appealed defendant LINA's decision, and defendant's decisions on appeal were not solely based upon the hearsay statement of Dr. Hynd, the court's inquiry as to whether defendant LINA's decision was correct must consider the bases for defendant LINA's decision on appeal and the evidence before it at those administrative stages.

The only additional evidence submitted to defendant LINA by plaintiff in connection with plaintiff's first appeal was a letter from Raul Romea, M.D., of the Orthopedic Institute, addressed to "To Whom It May Concern," stating as follows:

> Pam Null has Rheumatoid arthritis that is in active stage.  I recommend Ms. Null work part-time sedentary for 4-6 hours a day.

AR 468.  Plaintiff's counsel also submitted a copy of page 2 of a laboratory report from McBride Clinic, Inc. dated May 4, 2006.  *See* AR 432 (letter) & 441 (lab report). In his letter, plaintiff's counsel states that the laboratory report shows that Ms. Null's rheumatoid factor was "'approximately' 160 IU/ml." AR 434.  In rejecting plaintiff's first appeal, defendant LINA relied upon a complete file review by its own staff Medical Director, the verbal statement attributed to Dr. Hynd and the absence of "documentation of significant measured physical limitations to medically support extension of Long Term Disability and Waiver of Premium claim" such as "measured range of motion limitations by goniometry or inclinometry and/or significant muscle strength deficits by manual muscle testing." AR 426-27.  Defendant's Appeal Claim Manager stated that "[a]bsent such documentation, no continued work restrictions are medically supported." AR 427.

Plaintiff again appealed, AR 327-331, and submitted additional documents and medical records pertaining to her condition.  AR 267-71, 274-78, 281-83, 286-88,

291-325, 332-400 & 402-414.  On January 24, 2008, defendant LINA again upheld its prior decision in plaintiff's second and final administrative appeal, stating in relevant part as follows:

> Your client's complete file, including any additional information you submitted, was reviewed in its entirety without deference to prior reviews by one of our on staff Medical Directors.  Disability is determined by medically supported functional limitations/restrictions which would preclude an ability to perform Ms. Null's occupation as a Registered Nurse.  The information in her file indicates that her date of disability was May 4, 2000 due to Rheumatoid Arthritis.  We do not dispute that your client may have been somewhat limited or restricted due to her subsequent diagnosis as her disability claim was approved through August 17, 2006.
>
> On voluntary appeal we have received additional medical information to include:
>
> – medical records from 2007
> – x-ray report dated December 6, 2007
> – evaluation from Dr. Grillo dated December 6, 2007
> – office notes from Dr. Romea for the period of August 15, 2007 through November 28, 2007
>
> All of this information along with your client's complete claim file has been reviewed.  The medical review has concluded that the restrictions and limitations are not supported and do not preclude your client from working from August 17, 2006 and beyond.   According to the information in her file, the musculoskeletal exam is unremarkable.  Dr. Romea is unable to identify physical manifestations of active Rheumatoid Arthritis and questions the diagnosis. The information from Dr. Schwartz reports that your client does volunteer work for a few days per week.  Her physical exam describes no physical limitations.  Dr. Shaw indicates that Ms. Null has normal gait and station, and strength and tone are normal.  The Venous Doppler notes right Baker's Cyst, but this would not preclude work and is amenable to simple treatments.  In light of this fact, we must reaffirm our prior decision and no further benefits are payable.

AR 261-62.

To determine whether defendant LINA's decision to deny further LTD benefits was correct, the court begins by examining the medical records and other documents in the administrative record pertaining to plaintiff's condition in the months before defendant LINA terminated plaintiff's LTD benefits, bearing in mind that it was, and is, plaintiff's burden to demonstrate that she was disabled within the meaning of the governing provisions of the LTD plan..

In October of 2005, Tanna Shaw faxed a statement to LINA stating that Ms. Null was "released to work 10-12 hours a week.  I recommend no more than 3 hours/day initially." AR 609.  A "Disability Management Solutions Medical Request Form" completed by Dr. Shaw, who specializes in internal medicine, on February 20, 2006, at LINA's request, indicated that plaintiff's primary diagnosis was "rheumatoid arthritis;" that the "specific additional factors impacting return to work, if any" were "joint inflammation, pain, movement restrictions;" that plaintiff was taking Humira, Naprosep and Trazadone as medications related to her impairment; and that the "specific restrictions" she had placed on her patient were "[n]o repetitive bending, kneeling, lifting.  Limited to 4 hrs/day." AR 596.  Dr. Shaw indicated that Ms. Null could return to work at that time "if accommodations were made for the listed restrictions." *Id.*  Dr. Shaw also completed a "Physical Ability Assessment Form," indicating that in her opinion plaintiff could sit for 2.5 to 5.5 hours, stand occasionally, *i.e.* >2.5 hours, walk, reach, do fine manipulation, grasp and carry 11-20 pounds occasionally, lift 10 pounds frequently, push and pull a maximum of 20 pounds occasionally, rarely climb stairs, never climb a ladder, balance occasionally, never stoop, kneel, crouch or crawl and occasionally be exposed to extremes in temperature or to vibration, AR 597-98.  Dr. Shaw opined that it was "not advised"

that plaintiff work around machinery or use lower extremities for foot controls and that Ms. Null had no ability to work extended shifts or overtime.  AR 598.

On March 8, 2006, Robert Hynd, M.D., plaintiff's primary treating physician (a rheumatologist), completed the same forms.  *See* AR 581-83.  He indicated that Ms. Null's primary diagnosis was rheumatoid arthritis and that there were no specific additional factors impacting her return to work, noting that her rheumatoid arthritis was "non-active at this time as long as the patient was on the anti-RF drug Humira," of which plaintiff was receiving 40 mg. weekly.  AR 581.  However, he indicated that Ms. Null had problems with her lower back and stated that she couldn't stand for long periods and could not be lifting.  He checked the box "yes" in answer to the question of whether Ms. Null could return to work if accommodations were made for the listed restrictions (not standing for long periods and not lifting).  AR 581.

On the Physical Ability Assessment Form, Dr. Hynd indicated that Ms. Null could sit frequently (34-66% of an 8-hour workday or 2.5-5.5 hours) and could stand, walk, reach, do fine manipulations and grasp occasionally (1-33% or <2.5 hours) and lift and carry 10 pounds occasionally, all of which, he indicated, were supported by objective findings.  AR 582.  Dr. Hynd further indicated that Ms. Null could climb stairs, balance, stoop and kneel occasionally but that she could not push or pull any weight, and that she could tolerate exposure to temperature extremes occasionally but had no ability to work overtime or extended shifts or to use foot controls.  AR 583.  All of these assessments, he indicated, were supported by objective findings except for that of climbing stairs.  *Id.*  He included a note on the form that in addition to her "bad lower back problems," Ms. Null had problems with both knees so that she couldn't lift or stand for long periods at a time.  *Id.*  At LINA's request Dr. Hynd faxed to LINA on August 8, 2006, his medical records on plaintiff from February 1, 2006 to the present.  AR 559-575.

Notes from Dr. Hynd's examination of the plaintiff on February 2, 2006 indicate that plaintiff's arthralgia had increased and that she had pain in her upper back after she had been off Humira for 2+ weeks for surgery.  AR 574.  His notes also indicate that after 2 more doses of Humira, Ms. Null could no longer afford it.  Dr. Hynd's physical exam notes indicate a laboratory report of a positive rheumatoid factor but that his assessment was that there was "no evidence of RA activity now." AR 575.  On April 4, 2009, Dr. Hynd noted that Ms. Null was "[s]till on Methadone for somatic complaints" and that her "[p]roblems are more myalgic than arthritic; that she had discontinued Humira but still took Naprosep and Methadone, AR at 573; and that her RA had "remitted as far as I can see."  AR 573.  According to his records, Dr. Hynd again saw Ms. Null on May 2, 2006.  Most of his notes from that visit are not legible, but it appears that Ms. Null complained of arthralgia for 6 days, that she hurt everywhere, and stated that she needed some medicines or anti-inflammatory treatment.  AR 570.  Dr. Hynd started the plaintiff on Cymbalta and told her to resume taking Clinocil 200 mg. twice a day and ordered a bone scan of her entire body.

Reports dated May 4, 2006 of laboratory tests on plaintiff included in Dr. Hynds's records were all negative or normal except that plaintiff's chloride level and BUN were slightly elevated, her PF Titer was approximately 160 IU/md. and her mean cell volume (MCV) and mean cell hemoglobin (MCH) were slightly elevated. The report of bone scan spot films (in lieu of a whole body bone scan) done on plaintiff on May 9, 2006 noted "inhomogeneous uptake of the isotope in the posterior spine and some uptake in the shoulders, hips, knees, ankles and feet, consistent with some degenerative/arthritic change," and some uptake in the costochondral regions of the mid and lower rib cage, "probably representing some costochondritis."  AR 562.  The impression of the radiologist was that the "findings are suggestive for some degenerative/arthritic change with no evidence for acute process such as fracture."  *Id.*

Dr. Hynd's notes of plaintiff's visit on May 17, 2006 indicate that Ms. Null had found that 200 mg. of Clinoril b.i.d. was helpful and he ordered that she continue taking that and a trial of another medication, but most of Dr. Hynd's notes are illegible.  AR 525-26.  He did note the RF titer of 160 and in his assessment indicated that there was more evidence of OA (osteoarthritis?) than RA (rheumatoid arthritis).

The administrative record contains a letter from Robert Manolakas, M.D., M.B.A., Medical Director, to Dr. Hynd dated August 17, 2006, stating "Dr. Hynd, M.D. was contacted on 8/17/06 at 820 hrs. pst at" a telephone number specified and that "[h]e stated that Pam Null is physically able to return to work at this time."  AR 550.  The letter requested that "[i]f you agree with my letter, please sign this letter below" and "[i]f I have not captured our conversation accurately, please amend the letter to reflect your understanding of our conversation and sign it" and fax it back to the specified fax number at your earliest convenience.  *Id.*  There is no signed copy of this letter or signed amended copy of this letter in the administrative record.  Nor is there any notation of a telephone call from Dr. Hynd in response to this letter in the administrative record.  However, defendant LINA's letter to plaintiff terminating her LTD benefits is dated August 23, 2006.  Inasmuch as plaintiff's physicians' records, including those of her rheumatologist, Dr. Hynd, corroborate the hearsay referred to in the termination letter, the court cannot say that defendant LINA's determination that plaintiff was no longer disabled, was wrong.  The medical records in the administrative record dating from October 2005 through May of 2006 do not show that plaintiff, by reason of her rhematoid arthritis, arthralgia and/or myalgia, was unable to perform all of the material duties of any occupation for which plaintiff was or might have reasonably become qualified based upon her education, training or experience or that solely due to her arthritis, arthralgia and/or myalgia she was unable to earn more than 80% of her Indexed Covered Earnings.

The only additional evidence which defendant LINA had before it in connection with plaintiff's first appeal was the letter from Raul Romea, M.D., addressed "To Whom It May Concern," dated February 12, 2007 stating that "Pam Null has Rheumatoid Arthritis that is in active stage.  I recommend Ms. Null work part-time sedentary for 4-6 hours a day."  This letter was not accompanied by any medical findings, laboratory or test reports.  While it is true that defendant LINA, in affirming its prior denial of plaintiff's claim for continued LTD benefits (or termination of her LTD benefits), did not reference this letter, it is also true that this letter was unaccompanied by any clinical findings, which leads the court to conclude that the fact that LINA did not refer to this letter does not render defendant LINA's decision on plaintiff's first appeal incorrect or wrong.  Defendant LINA correctly stated that the medical <u>records</u> submitted with her appeal related to the period of time for which benefits had already been paid and that there was "no documentation of significant measured physical limitations to medically support extension of Long Term Disability," *i.e.*, to support the conclusion that plaintiff was unable by reason of her arthritis, arthralgia and/or myalgia to perform all of the material duties of her former occupation or any occupation for which she was and might reasonably become qualified or that she was unable solely by reason of her illness(es) to earn the threshold amount.

With plaintiff's second request for review, AR 327-331, plaintiff submitted a vocational evaluation and assessment dated November 14, 2007, AR 332-38; medical records of Robert F., Hynd, M.D., dated August 17, 2006, AR 339-41; medical records of Michael J. Schwartz, M.D., of Oklahoma Pain Care, Inc., dated August 23, 2006 to October 8, 2007, including medication records from December 24, 2003 to October 8, 2007, AR 342-367; medical records of Tanna Shaw, M.D., dated August 29, 2006 to June 27, 2007, AR 368-74; medical records of Michael J. Schwartz, M.D.,

of Oklahoma Pain Care dated July 26, 2006 and July 27, 2006, AR 375-77; and medical records of Raul Romea, M.D., of the Orthopedic Institute, dated December 4, 2006, AR 378-79.

Jeffrey L. Owen, M.S., C.R.C., a rehabilitation consultant who did the vocational evaluation and assessment of plaintiff on November 14, 2007, reported on plaintiff's medical status, subjective complaints, present physical treatments, estimate of daily activity and employment history, based upon plaintiff's statements to him and, in the case of medical status, his review of medical records. AR at 332-35. Among other things, he reported that "Dr. Hind [sic] treated her [plaintiff] and eventually told her she could return to work," AR at 334, and that she has been receiving social security checks since approximately 2001. In the section of his report labeled "testing and test results," the consultant indicated he administered the Wide Range Achievement Test, the Cops Interest Inventory and The Career Orientation, Placement and Evaluation survey. AR at 335-36. Ms. Null's WRAT results indicated a sixth grade achievement level in math, an eighth grade achievement level in reading and post-high school level in spelling. The consultant included this description of Ms. Null's subjective complaints at the time of the evaluation in his report:

> Ms. Null states, with the exception of her injuries, he [sic] also has high blood pressure that is controlled with medication. She denies having any family related health issues at the present time.
>
> She reports experiencing arthritic flare ups approximately one time per month. These flare ups usually last between 3 to 8 days in duration. During this period of time, the claimant states she has increased pain in her hips, legs, hands, wrists, shoulders and back. She reports constant pain in these areas, but reports the pain varies in severiety [sic] from day to day. Her worst pain is reported to be in her legs and feet. In addition to rheumaoid [sic] arthritis, the claimant reports being diagnosed with fibromyalgia which could be contributing to her overall discomfort.

> Ms. Null states she has difficulty with writing stating she is not able to write for extended time due to hand and wrist pain. She indicates lifting and carrying objects is problamatic [sic] at times as she experiences increased pain in her hands and wrists with lifting and carrying objects over 20 pounds. She also reports the activities of pushing and pulling cause increased pain in her hips and legs. The claimant states she is able to stand for approximately 15 minutes at one time and walk for approximately 15 minutes before the pain in her hips, legs, feet and back is aggrivated [sic]. She reports being able to sit for approximately 1 hour if he [sic] is able to shift positions as needed. The activities of stooping, bending or kneeling creates pain in the back, hips and legs also. She states the activities of handling and fingering objects is difficult due to the arthritis in the hands and wrists. She reports difficulty with her balance indicating the pain in her hips and legs makes her feel weak and unstable. Ms. Null states she is bothered by weather changes indicating wet weather causes increased discomfort in her joints. The claimant states she is not currently on any exercise programs or specialized diets, however she does try to do some light exercises a few times per week on her own initative [sic].

AR 334-35. With respect to "transferrable job skills," the consultant concluded as follows:

> As a result of the claimants past work in the nursing filed [sic], she does not possess significant transferrable job skills to occupations in the sedentary range of exertion. The skills that she has acquired would primarily transfer to occupations in the nursing occupations and some other occupations in the light exertional range. The claimant's past work is considered semi-skilled work and primarily required her to perform job duties requiring physical exertion in the medium or heavy range as defined by the Dictionary of Occupational Titles. As a result of his [sic] work, he [sic] does not possess any significant transferrable job skills to sedentary type of work.

AR 336.    Finally the consultant included the following conclusions and recommendations in his report:

> Considering the claimant's age, education, work history, medical information, along with vocational evaluation and assessment, it is my

26

opinion Ms. Null would be unable to return to her former work with Boulder Community Hospital as a nurse.  The claimant was required to be on her feet for extended periods of time and he [sic] was required to lift objects in excess of 20 pounds, as well as stoop, bend and crouch. Due to the claimants physical limitations and abilities, it is in my opinion, she would be unable to perform her past work.

Ms. Null is a 53 year old woman.  She has a 12th grade education and and [sic] associate degree in nursing.  Testing indicates the claimant is functioning well in spelling, with lower scores in reading and math.  The claimant has indicated physical limitations, including sitting, standing, and walking.  She has also reported joint pains with periods of "flare up" that would not allow her to perform work activity on a regular and continuing basis.  It is my opinion Ms. Null is not a good candidate for return to work at this time.  Considering the claimants age, education, work history, medical records and present physical and mental limitations, It is my opinion, Ms. Null is not able to perform the job duties of her past occupation as a nurse.  It is also my opinion the claimant is considered economically disabled and unable to return to the workforce on a sustained basis at this time.

One of the primary issues in this case is weather [sic] the claimant can perform a level of work activity for a continuing period of time. Unfortunately, the claimant continues to report periods of time when her symptoms are heightened causing her to be unable to perform activity on a consistent and continuing basis.  It is my opinion that the claimant is unable to maintain a 40 hour work week as a result of her impairments and therefore continues to be considered permanently and totally disabled at this time.  While there are periods of time when the claimant can perform some light work activity, she does not appear to be able to maintain this ability over an extended period of time and therefore she is not considered able to return to the workforce on any kind of sustained basis.  I am in agreement with the social security administration that Ms. Null is economically unemployable and unable to return to the workforce in any occupation for which she is qualified as a result of her age, education, work history, test scores, medical information and limitations from her impairments.

AR 337.

Dr. Robert Hynd's record of Ms. Null's visit on August 17, 2006 reflects that Ms. Null complained that she "hurts all over" and that she was somewhat tearful.  AR 339.  He noted that she had a history of positive rheumatoid factor but Humira and other drugs . . . "doe [sic] clearly help her as far as I can tell" but that she had never developed any deformities, that he had "never seen her with swollen joints," *id.*, and that she had not fractured anything.  *Id.*  His assessment was that "[t]here could possibly have been a remote history of rheumatoid arthritis but certainly it is not active now" and that she had "more evidence for depression and neuropathic pain." AR 340.  He noted that she would continue to see Dr. Schwartz at the pain clinic and that "[s]he goes to a psychology counselor now."  Dr. Hynd also indicated in his exam notes that he had never really been able to help Ms. Null unless she developed tender or swollen joints but that on August 17, 2006, she was able to "hop from one foot to the other, walk on her heels and toes, do squats, get out of a chair without using her hands and had full range of motion of her proximal and distal joints" and had "very good range of motion of her neck and lower back and as we pointed this out to her she seemed to realize 'I can do everything.'"  *Id.*

Records from Pain Care, Inc. for the period from August 23, 2006 to October 8, 2007 indicate Ms. Null took Lortab 10 mg. for a short time, regularly took Methadone 10 mg. for chronic pain, Trazadone for sleep, Sulindac, Activella, HCTZ, MV, and Humira part of the time; went on and off Cymbalta 60 mg., and went on and off Wellbutrin (both antidepressants); had pain levels which were usually in the 4 to 5 range (presumably out of 10) and at least for a short time at 6; that Ms. Null slept well and that her depression waxed and waned, but that Ms. Null usually denied having any problem with anxiety or depression.  AR 342-374.  Dr. Tanna Shaw's notes of her examination of plaintiff on June 27, 2007 indicated that plaintiff's gait and station was normal, her muscle strength was 5/5 for all groups tested, muscle tone was normal,

that she had "[c]hronic changes consistent with RA bilateral toes," but that her stability exam was normal, with no luxation, subluxation or laxity noted.  AR 369. According to Dr. Shaw, plaintiff's touch, pin, vibratory and proprioception sensations were normal.  *Id.*  The examining physician's note of September 20, 2006, states "Dr. Hynd says she can go back to work since RA is in remission" and indicated that plaintiff wanted to get off methadone, stating "Who will hire me on these medicines." AR 337.  The note also indicates that Ms. Null stated she feels "really good" with Cymbalta.  *Id.*  The physician's note for November 10, 2006 indicates that plaintiff was having a hard time with depression and getting motivated.  AR 355.  The note for January 1, 2007 indicates that plaintiff stated "Mentally I'm wonderful."  AR 353. The note of March 2, 2007 indicates that plaintiff stated she was "[h]aving a hard time with pain" and that she continued to volunteer a few days a week but was unable to work four days a week because of increased pain.  AR 351.

Dr. Raul Romea is a rheumatologist with the Orthopedic Institute who saw plaintiff on December 4, 2006.  Ms. Null reported to him pain in her upper arms and legs, deep in her calves extending to her thighs, without joint involvement, morning stiffness lasting two hours and mild chronic discomfort along the mid-thoracic spine. AR 378.  She related that she had a history of rheumatoid arthritis.  *Id.*  Dr. Romea's exam notes indicate that plaintiff's joints do not show any significant synovitis, tenderness or limitation of the upper extremities and that the lower extremity exam showed intact range of motion in both hips, knees and ankles with no synovitis or tenderness, although there were deformities along her MTP joints.  AR 379.  Dr. Romea's impression was of "nonspecific limping/myalgia," noting that she had "a history of rheumatoid arthritis which I am not convinced is active at the moment."  *Id.*

Upon review of the administrative record, including the medical evidence dating from October of 2005 through August 17, 2006, that most germane to

defendant LINA's decision, and including all of the medical and vocational evidence submitted by plaintiff after defendant LINA's initial decision to terminate plaintiff's LTD benefits, summarized above, the court cannot say that defendant LINA's decision that plaintiff was no longer disabled was wrong.  The court concludes, based upon its independent review, that plaintiff's claim for LTD benefits, measured against the definition of disability applicable after Disability Benefits have been payable for 24 months (see p. 17, above), is not supported by a preponderance of the evidence.

Was Defendant LINA's Decision To Terminate Plaintiff's<br>Waiver Of Premiums for Life Insurance Arbitrary?

Having reviewed all of the medical and vocational evidence relevant to whether plaintiff was still disabled when defendant LINA terminated plaintiff's waiver of premiums for life insurance, which presumably occurred at the time or shortly after defendant terminated plaintiff's LTD benefits, and considering defendant LINA's, conflict of interest as a factor in deciding whether defendant's decision to terminate plaintiff's WOP was an abuse of discretion, the court concludes that defendant LINA's decision that plaintiff was no longer disabled and thus not eligible for a waiver of premiums for life insurance was not arbitrary, capricious or an abuse of discretion.  Although the medical and vocational evidence was not free of all conflicts, substantial evidence supported defendant LINA's decision, reached on or shortly after August 17, 2006, that plaintiff was no longer eligible for WOP for life insurance because she was no longer disabled.

Did Defendant LINA Provide A Full Fair and Adequate Review?

Under ERISA, an insurer must provide a full and fair review of an initial denial of a claim for benefits.  29 U.S.C. § 1133(2).  A "full and fair review" requires "knowing what evidence the decision-maker relied upon, having the opportunity to address the accuracy and reliability of the evidence, and having the decision-maker

consider the evidence presented by both parties prior to reaching and rendering . . . . [its] decision." Sage v. Automation, Inc. Pension Plan and Trust, 845 F.2d 885, 893-94 (10th Cir. 1988) (quotation omitted); *see also* 29 C.F.R. § 2560, 503-1(h) (setting forth acceptable review procedures).

Defendant LINA's letters of April 17, 2007 (AR 426-27) and January 24, 2008 (AR 261-62) summarize the evidence which defendant relied on in its reviews. Plaintiff had ample opportunity to and did challenge the accuracy and reliability of the evidence upon which defendant LINA relied. *See* AR 461-68; 450-53; and AR 327-80. It is clear from defendant LINA's letter to plaintiff's counsel reaffirming each of its prior decisions as well as from the written Medical Reviews performed by defendant's staff Medical Directors, AR 429-30 & AR 263065, that defendant considered the evidence submitted by plaintiff in connection with her review requests, including the Vocational Evaluation and Assessment submitted by plaintiff, as well as medical records and information previously obtained by defendant, prior to reaching and rendering its decision. Although defendant LINA's letter of January 24, 2008 (AR 261-62) did not mention the Vocational Evaluation and Assessment dated November 4, 2007 (AR 332-38), that evaluation and assessment did not include any testing of plaintiff's physical abilities. Moreover, the consultant's conclusions concerning what work activity plaintiff could not perform and that she was unable to maintain a 40-hour work week appear to be based primarily, if not solely, on plaintiff's own report or descriptions of her symptoms and physical limitations/impairments.

## CONCLUSION

In accordance with the foregoing, the decision of defendant Life Insurance Company of North America on or about August 17, 2006 to terminate plaintiff's long-

term disability benefits and waiver of premiums for life insurance based upon its determination that plaintiff was no longer disabled is **AFFIRMED**.

Dated this 19th day of May, 2009.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


08-0297p009.wpd